BULLARD, APPELLANT, v. ZIMMERMAN ET AL., RESPONDENTS.

(No. 6,302.)

(Submitted April 17, 1928. Decided May 25, 1928.)

[268 Pac. 512.]

## Default Judgment Procured by Fraud—Suit in Equity to Set Aside—Complaint—Sufficiency—Venue — Equity — Jurisdiction—Absence of Remedy at Law—Rule—Res Adjudicata.

Work and Labor — Mechanic's Lien — Foreclosure — Complaint—Sufficiency as Against General Demurrer.
1. If a complaint states a cause of action on any theory it is proof against a general demurrer, and under that rule *held*, that the fact that, in an action against a number of defendants for services rendered, the complaint had attached to it a copy of plaintiff's mechanic's lien showing a statement of account against two of. complaining defendant's co-defendants, did not render the complaint insufficient as against him, the lien, foreclosure of which was sought, not having been an essential part of the complaint.

Default Judgment—Suit in Equity to Set Aside for Extrinsic Fraud in Procuring It—Complaint—Sufficiency.
2. In a suit to set aside a default judgment for extrinsic fraud in its procurement, complaint alleging that defendant's counsel had by false promises prevailed upon plaintiff not to file an answer within time, assuring him that until an appeal he intended taking from an order in the cause had been decided, he would not proceed against plaintiff, stated a cause of action.

Fraud—Definition.
3. Fraud, in its generic sense, especially as used in courts of equity, comprises all acts, omissions and concealments involving a legal or equitable duty which result in damages to another; it is any cunning or artifice used to cheat or deceive another.

Action for Debt — Foreclosure of Mechanic's Lien — Plaintiff may Waive Lien and Take Personal Judgment.
4. Generally speaking, in an action for debt and to foreclose a mechanic's lien plaintiff may waive his. lien and take a personal judgment.

Fraudulent Judgment—Suit in Equity to Annul may be Brought in Any County in State.
5. A suit in equity to annul a judgment for alleged fraud in its procurement may be brought in any county, subject to right of transfer, regardless of where, in the state, the judgment attacked was rendered.

1. See 21 Cal. Jur. 111.
2. See 15 Cal. Jur. 14; 15 R. C. L. 765.
3. See 12 Cal. Jur. 705; 12 R. C. L. 230; 15 R. C. L. 762.
4. See 18 R. C. L. 991.

[82 Mont. 434.]

Equity—Jurisdiction—Absence of Remedy at Law—Rule.

6.  To warrant refusal of relief to a suitor in a court of equity on the ground that he has a remedy at law, such remedy must not only be plain and speedy, but also adequate, complete and proximately certain; if there is a doubt as to its adequacy such doubt should be resolved in favor of jurisdiction.

Default Judgment—Order Refusing to Set Aside Made Before Final Judgment not Appealable.

7.  An order, made before final judgment, refusing to set aside a default is not appealable.

Default Judgment Procured by Fraud—When Failure to Appeal from Judgment not Bar to Suit in Equity to Set It Aside.

8.  Where plaintiff in a suit to set aside an alleged fraudulent default judgment had moved the court to set the default aside, which motion was denied on the ground that the court under its rules could not recognize an oral agreement of defendant not to have default entered until the happening of a certain event, the fact that he did not appeal from the judgment and thus exhaust his remedy at law did not bar his right to bring the suit, since under the circumstances it was doubtful that the judgment would have been reversed for abuse of discretion on the part of the trial court, and therefore that remedy was not so adequate and certain to right the wrong as a suit in equity afforded.

Same—Motion to Set Aside not as Adequate a Remedy as Suit in Equity to Annul.

9.  Motion, under section 9187, Revised Codes, 1921, informal in character, to have a default judgment procured by fraud set aside, is not so adequate a remedy as a suit in equity where the matter can be thoroughly investigated, and therefore failure of plaintiff to make such a motion did not bar recourse to equity.

Same—Suit in Equity to Vacate—Prior Denial of Motion to Vacate Judgment not *Res Adjudicata.*

10.  On appeal from a judgment of dismissal of a suit to vacate an alleged fraudulent default judgment, the contention of respondent that denial of appellant's motion (made before judgment) to have the default vacated became *res adjudicata* and precluded the latter from resorting to equity, *held* without merit.

---

[1]  Pleading, 31 **Cyc.**, p. 290, n. 65.  Work and Labor, 40 **Cyc.**, p. 2839, n. 7.

[2, 3]  Appeal and Error, 4 **C. J.**, p. 747, n. 32.  Fraud, 26 **C. J.**, p. 1059, n. 2.  Judgments, 34 **C. J.**, p. 472, n. 66, p. 491, n. 33.

[4]  Mechanics' Liens, 40 **C. J.**, p. 495, n. 62.

[5]  Courts, 15 **C. J.**, p. 1144, n. 55.  Judgments, 34 **C. J.**, p. 434, n. 21, p. 484, n. 12.

[6–8]  Appeal and Error, 3 **C. J.**, p. 527, n. 33; 4 **C. J.**, p. 521, n. 76, p. 731, n. 81, p. 789, n. 68, p. 840, n. 33.  Equity, 21 **C. J.**, p. 51, n. 33, p. 52, n. 44, p. 53, n. 55, 60, p. 69, n. 14.  Judgments, 34 **C. J.**, p. 437, n. 49.

[9]  Equity, 21 **C. J.**, p. 35, n. 15, p. 107, n. 75, p. 110, n. 8, p. 130, n. 25.  Judgments, 34 **C. J.**, p. 435, n. 33; p. 473, n. 80.

6.  See 10 Cal. Jur. 464, 467; 10 R. C. L. 277, 279.

8.  See 15 Cal. Jur. 27.

9.  See 15 Cal. Jur. 27; 15 R. C. L. 748, 761; 10 R. C. L. 271.

*Appeal from District Court, Wheatland County, in the Fourteenth Judicial District; Stanley E. Felt, a Judge of the Sixteenth District, presiding.*

SUIT by Gilman Bullard against J. C. Zimmerman and Emmet O'Sullivan. From a judgment for defendant O'Sullivan, plaintiff appeals. Reversed and remanded.

*Mr. C. A. Spaulding* and *Mr. W. C. Husband,* for Appellant, submitted a brief; *Mr. Spaulding* argued the cause orally.

*Messrs. Walsh & Nagle,* for Respondent, submitted a brief; *Mr. Raymond T. Nagle* argued the cause orally.

MR. JUSTICE MYERS delivered the opinion of the court.

This is a suit in equity to have annulled, for alleged fraud in the procurement thereof, a judgment in an action at law.

June 21, 1924, in the district court of Wheatland County, J. C. Zimmerman, a defendant herein, instituted an action against Gilman Bullard, plaintiff herein, and several other defendants. Among the defendants were H. E. Whittekind and Earl Daniels, copartners under the firm name and style of Whittekind & Daniels. The action was one for recovery on *quantum meruit* for labor and services alleged to have been performed by Zimmerman, at the instance and request of certain named defendants, including Bullard, upon certain property. In the action there was sought not only a money judgment against certain designated defendants, including Bullard, but foreclosure of a mechanic's lien, which Zimmerman had filed, upon jointly owned property in Wheatland County of those defendants. It was alleged in the complaint that certain other defendants had or claimed to have some interest in the property upon which the mechanic's lien had been filed but that, if any, it was subordinate to the lien of Zimmerman and it was sought to foreclose and bar any such interest and make it inferior to Zimmerman's lien. A copy

of the lien was attached to and made a part of the complaint. The statement of account in the lien was against Whittekind & Daniels only. In addition to other relief sought, judgment for an attorney fee was asked. Emmet O'Sullivan, co-defendant herein, was Zimmerman's attorney in the action.

December 30, 1925, in that action and in the district court of Wheatland County, a default personal judgment for $781.50 and, in addition, for costs and an attorney fee, in all $880.35, was rendered against Bullard and another defendant. Enforcement of the mechanic's lien was waived and no decree therefor was had. The judgment rendered was duly entered.

In the complaint in the case at bar, the foregoing narrated facts are alleged and, in addition, the following allegations are made: That Bullard, by counsel, appeared in Zimmerman's action by the filing of a demurrer to the complaint; his attorneys were Jones & Jones, of Harlowton; the demurrer was overruled and Bullard was given thirty days in which to answer; Jones & Jones represented also C. F. Williams, another defendant therein; default of Williams had been entered; Jones & Jones made application to have it vacated; the application was granted; O'Sullivan declared and represented to Jones & Jones that he would appeal to the supreme court from the order vacating the default of Williams and informed Jones & Jones and orally stipulated and agreed with them that until the supreme court might decide such appeal Bullard need not answer the complaint and, if the supreme court should uphold the default entered against Williams, Zimmerman, in that event, would enforce his judgment wholly against Williams and realize on it against Williams alone and Bullard need never answer or pay any further attention to the action but, if the supreme court should sustain the district court in setting aside Williams' default, Bullard could then answer.

It is alleged further that Jones & Jones believed the representations, stipulations and agreements of O'Sullivan and relied and acted thereon and, on account thereof, did not

answer for Bullard; that the representations, stipulations and agreements of O'Sullivan were false and were known to him to be false and were purposely made to induce Jones & Jones not to answer for Bullard, so O'Sullivan could thereafter have entered a default against Bullard and thereby prevent him from making any defense and thus obtain a fraudulent judg- ment against Bullard; that thereafter and before any action by the supreme court in regard to Williams' default (no such action to date having been had) O'Sullivan, wrongfully and fraudu- lently, without notice to Jones & Jones and without their knowledge, had entered the default of Bullard and later waived the mechanic's lien and obtained such personal judg- ment against Bullard; that, in obtaining the judgment, O'Sul- livan was sworn as a witness and testified falsely, his client, or any person other than O'Sullivan, not testifying. It is alleged that Bullard had and has a good, full, complete and meritorious defense to Zimmerman's action and owes Zimmerman nothing and never employed, engaged or authorized him to do any work. The facts constituting the defense are fully set forth.

It is alleged further that, after the default of Bullard had been so entered, Jones & Jones appeared in the Wheatland County court and moved to have it vacated, because of the representations, stipulations and agreements of O'Sullivan, and that the motion was denied upon the sole ground that there was a rule of court that stipulations and agreements of counsel must be in writing or they would not be regarded.

All this and much more is alleged. It is alleged that in all he did O'Sullivan was actuated by a fraudulent intent to procure a judgment against Bullard without permitting Bullard to interpose any defense and that all was designed to perpetrate a fraud. It is alleged that Bullard resides in Lewis and Clark County and, individually, owns real estate situate in that county; that Zimmerman's judgment is a lien on such real estate; that Bullard has no plain, speedy or adequate remedy at law and is remediless without equitable interposition and

relief. A copy of the judgment-roll in Zimmerman's action is attached to and made a part of the complaint.

Bullard prays that Zimmerman's judgment be vacated, held for naught and canceled; that, meantime, defendants, their servants, agents, attorneys and employees, be enjoined from issuing execution thereon; and for such other and further relief as may be meet and equitable.

This suit by Bullard for equitable relief from the alleged fraudulent judgment was brought in the district court of Lewis and Clark County and therefrom transferred to the district court of Wheatland County. Zimmerman and O'Sullivan were made defendants. Defendant O'Sullivan demurred to the complaint and gave these grounds of demurrer: "(1) That the complaint does not state facts sufficient to constitute a cause of action against this defendant; (2) that it appears from the face of the complaint herein that the above-entitled court has no jurisdiction of the parties defendant or of the subject of this action; (3) that there is another action, between the same parties, for the same cause." The demurrer was sustained. Plaintiff declined to amend and thereupon judgment in favor of Defendant O'Sullivan and against plaintiff, dismissing the complaint and awarding costs to Defendant O'Sullivan, was rendered and entered. Plaintiff appealed and assigns as specifications of error: (1) The court erred in sustaining the demurrer; (2) the court erred in rendering judgment dismissing the complaint and awarding costs.

Based on those specifications, plaintiff contends that Zimmerman's complaint in his action against Bullard and others does not state a cause of action against Bullard; that extrinsic fraud was practiced in the procurement of Zimmerman's judgment; that, without amending his complaint, Zimmerman had no legal right to waive his mechanic's lien and take a personal judgment.

The two specifications of error amount to the same thing: that the trial court should not have sustained the demurrer.

The various contentions, made in argument, of each party we shall notice in appropriate order.

As to the grounds of demurrer, there is certainly nothing in the complaint to show that there is another action, between the same parties, for the same cause. So far as disclosed, there is no other action whatever between the parties. There was one but it ripened into a judgment and the action is not pending. A judgment is not an action. This suit was brought to set aside that judgment for alleged fraud; a different thing. There remain, then, to be considered, only two grounds of demurrer: that the complaint is not sufficient and that the trial court was without jurisdiction of person or subject matter.

We consider first plaintiff's contentions. He contends that [1] Zimmerman's complaint in his action does not state a cause of action against Bullard. In that we think him mistaken. It is, first of all, a complaint in a simple action of debt and plainly makes the few allegations required. True, in addition, foreclosure of a mechanic's lien is sought and plaintiff points out that the copy of the mechanic's lien attached shows a statement of account against Whittekind & Daniels only. The mechanic's lien was only ancillary to the debt and could be disregarded. (*Missoula Merc. Co.* v. *O'Donnell,* 24 Mont. 65, 60 Pac. 594.) If a complaint states a cause of action on any theory it is proof against a general demurrer (*Grover* v. *Hines,* 66 Mont. 230, 213 Pac. 250) and will be sustained. (*Stiemke* v. *Jankovich,* 68 Mont. 60, 217 Pac. 650.) The complaint certainly states a cause of action, in debt, against Bullard. We hold there is no merit in the contention.

Plaintiff contends that, in procurement of Zimmerman's [2, 3] judgment, O'Sullivan perpetrated upon Bullard extrinsic fraud. Of that there can be no doubt. As this suit was decided on demurrer to the complaint, we must take every allegation of the complaint to be a verity. Section 7480, Revised Codes, 1921, defines actual fraud, among other things,

as a promise made (with intent to deceive another party to a contract or, the same thing, agreement) without any intention of performing it. In effect, the complaint charges O'Sullivan with having made just such a promise and, furthermore, that he did not perform it, from which Bullard suffered detriment. "Fraud, in its generic sense, especially as the word is used in courts of equity, comprises all acts, omissions and concealments involving a breach of legal or equitable duty and resulting in damage to another. Fraud has also been defined as any cunning or artifice used to cheat or deceive another." (26 C. J. 1059.) The acts charged to O'Sullivan certainly come under these definitions. More than that, we hold the acts constitute extrinsic fraud. In *Kennedy* v. *Dickie*, 34 Mont. 205, 85 Pac. 982, extrinsic fraud against the losing party to a lawsuit is defined as fraud practiced upon the unsuccessful party, "with the result that he has been prevented from fully and fairly presenting his case for consideration; in short, the situation in the case must have been such that there has never been a decision in a real contest over the matter in controversy." In *Clark* v. *Clark*, 64 Mont. 386, 210 Pac. 93, is said: "The acts for which a judgment or decree may be set aside or annulled have reference only to fraud which is extrinsic or collateral to the matter tried by the court and not to fraud in the matter on which the judgment was rendered. (15 R. C. L. 762.) In 2 Freeman on Judgments, section 489, the rule is stated as follows: 'It must be borne in mind that it is not fraud in the cause of action but fraud in its management which entitles a party to relief. The fraud for which a judgment may be vacated or enjoined in equity must be in the procurement of the judgment.' "

That is just the kind of fraud which the acts alleged in plaintiff's complaint impute to O'Sullivan and, undoubtedly, they constitute extrinsic fraud. Counsel in this suit agree that it takes extrinsic fraud in its procurement to enable equity, for fraud, to annul a judgment, and that if such fraud

exist it is sufficient to annul the judgment. In that, by all authority, they are correct and, as we hold extrinsic fraud is charged in this suit, we hold the complaint sufficient in that respect.

Plaintiff contends Zimmerman had no legal right, without [4] amending his complaint, to waive his mechanic's lien and take a personal judgment. In and of itself (unless considered as a factor in a scheme to defraud), Zimmerman had the right to do as he did in that respect. (*Missoula Merc. Co.* v. *O'Donnell,* supra; *Roberts* v. *Sinnott,* 55 Mont. 369, 177 Pac. 252.)

Turning to Defendant O'Sullivan's contentions in argu- [5] ment, he contends first that, in this suit, the district court of Lewis and Clark County had no jurisdiction of person or subject matter and, by transfer, could not confer any upon the district court of Wheatland County. With the premise to that conclusion we do not agree. The Constitution of Montana (Art. VIII, sec. 11) says the district courts shall have original jurisdiction in all cases in equity. Section 8829, Revised Codes, 1921, says the same thing. Section 8831, Revised Codes, 1921, says the process of the district court extends to all parts of the state. Nowhere in the Constitution or Codes of Montana are there any territorial limitations (within the boundaries of the state) to the power of a district court to exercise authority in any matter of which it is given jurisdiction, save as set forth in Chapter 7, Part III, Code of Civil Procedure. There, after providing, in sections 9093 and 9094, that certain actions (other than such a suit as this) must be tried in certain places, it is provided in section 9096 that all other actions shall be tried in the county in which the defendants, or any of them, may reside, at the commencement of the action, or where the plaintiff resides and the defendants, or any of them, may be found, with some qualifying details. However, section 9097 provides, "if the county in which the action is commenced is not the proper county

for the trial thereof, the action may, notwithstanding, be tried therein, unless the defendant, at the time he appears and answers or demurs, files an affidavit of merits and demands, in writing, that the trial be had in the proper county.'' Thus, we see, with certain exceptions, of which this suit is not one, an action in a matter over which the district court has jurisdiction may be brought in any county of the state and may be tried where brought, unless sent elsewhere upon demand of defendant or by agreement. There is no reason why a suit to annul a judgment for alleged fraud may not be brought in any county, as well as a suit for divorce or an action upon contract, subject to right of transfer. (*State ex rel. Mackey* v. *District Court*, 40 Mont. 359, 135 Am. St. Rep. 622, 106 Pac. 1098.)

California has, in this respect, constitutional and statutory provisions identical with ours and, in just such a suit as this, one to annul, for fraud, a judgment, the supreme court of California has passed squarely upon this question and has upheld jurisdiction, holding the suit may be brought in any county of the state, subject to transfer, regardless of where, in the state, the judgment attacked was rendered. (*Herd* v. *Tuohy*, 133 Cal. 55, 65 Pac. 139.) It is the general holding.

The fact that a fraudulent judgment was obtained in one court does not deprive other courts of general and equal jurisdiction from exercising their equity powers to annul it. (*Douglass* v. *Joyner*, 1 Baxt. — Tenn. — 32; *Vanmeter* v. *Jones*, 3 N. J. Eq. 520; *Howenstein* v. *Sweet*, 13 Ohio C. C. 239; *Manahan* v. *Hart*, 24 Ohio C. C. 527; *Munnikhuysen* v. *Magraw*, 57 Md. 172; *State ex rel. Phelan* v. *Engelmann*, 86 Mo. 551; *Stapleton* v. *Wilcox*, 2 Tex. Civ. App. 542, 21 S. W. 972; *Ketelsen & Degetau* v. *Pratt Bros. & Seay*, —— Tex. Civ. App. ——, 100 S. W. 1172; *Ashcraft* v. *Knoblock*, 146 Ind. 169, 45 N. E. 69; *Holderman* v. *Tedford*, 7 Kan. App. 657, 53 Pac. 887; *Dennis* v. *Kelly*, 81 Okl. 155, 197 Pac. 442; *Sayers* v. *Burkhardt*, 85 Fed. 246.) Citations might be greatly extended.

"There is no reason, under proper circumstances, why one court may not afford equitable relief against the judgments of other courts and they are constantly doing so." (3 Freeman on Judgments, 5th ed., 2450, and long list of cases cited.) "An independent suit, the object of which is to set aside a decree, because of conspiracy and fraud resorted to and practiced in procuring the same, is not necessarily required to be brought in the court where said decree was rendered but may be instituted in any court of competent jurisdiction." (*Sayers* v. *Burkhardt*, supra.) "It is competent for every court, whether superior or inferior, to treat as a nullity any judgment which can be shown to have been obtained by manifest fraud." (*State ex rel. Phelan* v. *Englemann*, supra.)

The cases cited by Defendant O'Sullivan are cases in which one court sought to interfere with the process of another court of equal jurisdiction, in a live case, still at issue, with the litigation in progress, which may not be done. It is entirely different when a case is at an end, merged in a judgment, and suit is brought to annul the judgment on the ground of fraud. We hold that the court in which this suit was instituted had jurisdiction and, therefore, so had the court to which it was transferred.

Defendant O'Sullivan contends plaintiff was not without an adequate remedy at law. Plaintiff, on the other hand, alleges he has no plain, speedy and adequate remedy at law. That, of course, is a crucial point. Plaintiff may not resort to equity if he has a plain, speedy and adequate remedy at law. (*Philbrick* v. *American Bank & Trust Co.*, 58 Mont. 376, 193 Pac. 59.)

Plaintiff had a remedy at law; that provided in section [6-8] 9187, Revised Codes, 1921; the provision for application to be relieved from a default taken against him through his mistake, inadvertence, surprise or excusable neglect; and he exercised it. Plaintiff made to the district court of Wheatland County such application. It was denied, the complaint

alleges, upon the sole ground that there was a rule of court that stipulations and agreements of counsel must be in writing or they would not be regarded. Did plaintiff thereby exhaust his remedy at law? Defendant O'Sullivan, in his brief, contends plaintiff did not do so, because he did not appeal to this court. Plaintiff did not appeal from the district court's order, refusing to vacate the default taken against him, but he had no right to appeal therefrom.

According to the complaint herein, the default of Bullard was applied for and entered, February 20, 1925; thereafter and on learning that default had been entered, Jones & Jones moved that it be vacated and set aside, giving as ground therefor the representations, stipulations and agreements of O'Sullivan; when the motion or application was made is not shown but the presumption is it was made within the six months allowed by statute. The complaint says it was denied on the sole ground that the stipulations and agreements were not in writing, as required by rule of court, and not because not made in time. The application must have been taken under advisement by the court, because the complaint says it was denied, November 2, 1925. According to the complaint, O'Sullivan made proof and obtained judgment for Zimmerman, December 30, 1925. Thus, Jones & Jones applied to have Bullard's default set aside, so he might answer, before judgment was rendered against him and the court denied the application before rendition of judgment.

An order, made before final judgment, refusing to set aside a default is not an appealable order. (*Bowen* v. *Webb,* 34 Mont. 61, 85 Pac. 739; sec. 9731, Rev. Codes, 1921.) The case here cited was based on a statute identical, in that particular, with the statute now in force, section 9731, supra.

However, Defendant O'Sullivan contends plaintiffs should have appealed from the judgment rendered against him and by that means have had reviewed by this court the order of the district court, denying his application to have vacated the de-

fault taken against him, and insists that afforded him a remedy at law. That might have been done. By appealing from the judgment and accompanying the appeal with a bill of exceptions (including the papers used upon the application), properly prepared and settled, within the time allowed therefor, showing such application and the order denying the application, plaintiff could have had reviewed by this court the order of the district court, denying his application. (Sec. 9750, Rev. Codes, 1921; *Foster* v. *Coyle,* 59 Mont. 444, 197 Pac. 747.) It may be conceded that was a remedy at law.

However, in order to refuse a suitor relief in equity, it is not sufficient that he have a remedy at law; that does not fulfill the requirement; it is necessary that he have a plain, speedy and adequate remedy at law. (*Philbrick* v. *American Bank & Trust Co.,* supra.) It must be, also, a complete remedy. (*Wilson* v. *Harris,* 21 Mont. 374, 54 Pac. 46.) In discussion of this principle of law, while the authorities require that a remedy at law must be plain and speedy, especial stress is put upon the requirement that it must be adequate and complete.

Where obstacles exist to the assertion of the defense at law or where the remedy by defense at law is not necessarily adequate, relief in equity is not precluded. (21 C. J. 69.) "To divest a court of equity of jurisdiction the remedy at law must be plain. This is an element of adequacy so important that it is usually emphasized by specific statement in all enunciations of the general rule. It is sometimes said that the legal remedy must be obvious. The rule is usually stated, less radically, that equity will take jurisdiction where it is 'doubtful' whether relief could be had at law or where it is doubtful whether a recognized legal remedy would be adequate. In some cases it is said that equity will interpose where the remedy at law is 'difficult and doubtful.'" (21 C. J. 53.) "The existence of a remedy at law does not deprive equity of jurisdiction unless such remedy is adequate. By this is meant that it must be clear, complete and as practi-

cal and efficient to the ends of justice and its prompt administration as the remedy in equity or, as it is expressed in almost innumerable cases, in order to oust equity of jurisdiction the remedy at law must be 'plain, adequate and complete.'" (21 C. J. 50.) "A court of equity may determine for itself the adequacy of the legal remedy and where there is a doubt as to its adequacy such doubt should be resolved in favor of the equitable jurisdiction." (21 C. J. 52.)

The foregoing text statements of the law are supported by cited cases almost innumerable. A few only of them will be noticed. "The jurisdiction in equity attaches unless the legal remedy, both in respect to the final relief and the mode of obtaining it, is as efficient as the remedy which equity would afford under the same circumstances." (*Gormley* v. *Clark*, 134 U. S. 338, 33 L. Ed. 909, 10 Sup. Ct. Rep. 554.) "It must be as perfect and adequate." (*Barrington* v. *Ryan*, 88 Mo. App. 85.) "In other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity." (*South Portland Land Co.* v. *Munger*, 36 Or. 457, 60 Pac. 5.) "Where there is a clear right and yet there is no remedy in a court of law or the remedy is not plain, adequate and complete and adapted to the particular exigency, then and in such cases courts of equity will maintain jurisdiction." (*Ritterhoff* v. *Puget Sound Nat. Bank*, 37 Wash. 76, 107 Am. St. Rep. 791, 79 Pac. 601.) "If the remedy at law is doubtful, difficult, not adequate to the object, not so complete as in equity, not so efficient and practicable to the ends of justice and its prompt administration, then equity will take jurisdiction." (*Rumbarger* v. *Yokum*, 174 Fed. 55.) "If its defense at law would not be as complete, adequate and certain as in a court of equity, it should not be required to relinquish its equitable rights." (*Eastern Oil Co.* v. *Coulehan*, 65 W. Va. 531, 64 S. E. 836.) "It must be adequate to the particular exigency or equity will maintain jurisdiction." (*McKinney* v. *Curtiss*, 60 Mich. 611, 27 N. W.

691.) "The phrase 'adequate remedy at law' is often misinterpreted. The controlling question is not has the party a remedy (?) but is that remedy fully commensurate with the necessities and rights of the parties under all the circumstances of the particular case? Or, as stated otherwise, 'equity has no jurisdiction where there is full, complete and adequate remedy at law.' To defeat equitable cognizance, the legal remedy must be full; it must be complete; it must be adequate. If it does not reach the end intended and actually compel performance of the duty, the breach of which is alleged, it cannot be said to be fully adequate to meet the justice and necessities of the case. To deny equity jurisdiction, because of a remedy at law, the legal remedy must not be merely partial but it must be adequate and as complete and efficacious as that given by equity. A remedy at law is not adequate, in the sense that it will deprive a court of equity of jurisdiction, unless it is as certain, prompt and efficient to the ends of justice as the remedy in equity." (*Jennings* v. *Southern Carbon Co.*, 73 W. Va. 215, 80 S. E. 368.) The foregoing excerpts state the overwhelming weight of authority and the general trend of the decisions. Applying them to the case at bar, with relation to the contention that plaintiff should have appealed from the judgment and had reviewed the order complained of, how do they fit it?

It is the settled law of this state that when a district court denies an application to have set aside a default or a default judgment the action of the court will not be reversed unless there was manifest abuse of the court's discretion. (*Eder* v. *Bereolos*, 63 Mont. 363, 207 Pac. 471; *Pacific Acceptance Corp.* v. *McCue*, 71 Mont. 99, 228 Pac. 761; *First State Bank* v. *Larsen*, 72 Mont. 400, 233 Pac. 960; *Reynolds* v. *Gladys Belle Oil Co.*, 75 Mont. 332, 243 Pac. 576.) In *Martin* v. *DeLoge*, 15 Mont. 343, 39 Pac. 312, this court decided that a district court had no right to set aside a default, upon the ground of oral agreement of counsel for extension of time for plead-

ing, in disregard of a rule of court that such agreements must be in writing, and that when the district court did so it was a manifest abuse of discretion and reversible error, and the order of the district court was reversed. That decision is approved in *Middle States Oil Corp.* v. *Tanner-Jones Drilling Co.*, 73 Mont. 180, 235 Pac. 770.

The papers on which was made the application to have vacated the default of Bullard are not before us. The complaint in this case says the application was made on the representations, stipulations and agreements of O'Sullivan. It is obvious nothing else, at that time, could have been presented to the district court. It was impossible then to present to that court all that is now before us in this case; impossible to show that O'Sullivan had taken advantage of Bullard, by waiving his client's mechanic's lien, and, indepedent of the mechanic's lien, had taken a personal judgment against Bullard, a judgment procured by fraud and which was a. lien upon Bullard's individually owned real estate in another county, for those things then had not happened; no judgment, personal or other, had been procured by fraud or otherwise. It was impossible then to charge knowingly that, from the beginning, all that O'Sullivan had done was actuated by preconceived intent to obtain, by fraudulent means, a fraudulent personal judgment against Bullard. Had Bullard appealed from the judgment and had reviewed the order complained of, on the showing made at the time of his application, we say it is at least doubtful if this court would have reversed the judgment. Upon appeal, the presumption is that an order of the district court is correct and was justified and should be upheld (*Gilna* v. *Barker*, 78 Mont. 343, 254 Pac. 169); and, had Bullard appealed, this court would have been confronted by that presumption. At any rate, the papers used on the application to have vacated the default of Bullard not being before us, we may not say the district court abused its discretion and erred and that this court, upon appeal, on that

account, would have reversed the judgment. Under those circumstances, may we say plaintiff's remedy by appeal, such as it was, was an adequate remedy at law, such as to preclude recourse to equity?

In the language of the authorities hereinbefore set forth and quoted, were there no "obstacles" to the reversal, upon appeal, of the district court's order; was the presumption in favor of the court's order no obstacle; is it not at least "doubtful" whether relief would have been had by that method; was that pathway neither "difficult" nor "doubtful"; was relief by appeal "as clear and complete, as practical and efficient, to the ends of justice" as the remedy in equity; was the remedy by appeal "as perfect and adequate"; was it adapted to "the particular exigency"; was it "adequate to the object," i. e., enabling Bullard to answer and defend; was it as "certain" to obtain relief as by resorting to equity; was it "commensurate" with the necessities and rights of plaintiff; was it as "full" as equity affords; would it have reached "the end intended" and actually have "compelled performance" of the object sought; was it as "complete and efficacious" as equity relief? It seems to us the answer to all is obvious; it must be in the negative.

In *Gray* v. *Citizens' Gas Co.,* 206 Pa. 303, 55 Atl. 859, it is said the remedy at law must be "so proximately certain as to be adequate to right the wrong complained of." We have held there was fraud and, therefore, wrong. Can anyone say truthfully that upon appeal from the judgment this court would have been "proximately certain" to have reversed the order of the district court? We cannot. The remedy by appeal was speedy enough and it may have been plain, so far as was concerned procedure, but manifestly it was not adequate, full or complete; at least not so much so as relief in equity; not so certain. "The want of an adequate remedy at law 'constitutes the very cradle of equity.'" (*Raymond* v. *Blancgrass,* 36 Mont. 449, 15 L. R. A. (n. s.) 976, 93 Pac.

648.) "Inadequacy or deficiency of the legal remedy is the fundamental concept of equity jurisdiction." (*Philbrick* **v.** *American Bank & Trust Co.,* supra.)

However, Defendant O'Sullivan contends further that, after [9] rendition of the default judgment, plaintiff should have moved the court, under section 9187, supra, to vacate the judgment, on the ground that it was procured by the alleged extrinsic fraud of O'Sullivan. Such fraud perpetrated by an adversary is not mentioned in section 9187, supra, as a ground for relief thereunder from a judgment taken. Necessarily, such a motion, had it been made, would have been based on the same acts of deception as was based the motion for relief from the default and, while plaintiff could have made such a motion, under the circumstances of this case we do not believe it would have afforded so adequate, effective or efficient a remedy as is afforded by a suit in equity. Professor Pomeroy, in his able work on Equity Jurisprudence, Vol. 5, p. 4708, says: "It would seem that a remedy by motion is never so adequate a remedy as a bill in chancery. It is informal and generally rests upon affidavits. This certainly, as a matter of fact, is not so satisfactory as an equity suit, where the matter can be thoroughly investigated." The inadequacy, many times, for relief from a judgment obtained by fraud, of a motion to have vacated the judgment is discussed in the editor's note (pp. 444, 445) to *Payton* v. *McQuown* (Ky.), reported in 53 Am. St. Rep. 437. Many courts hold that in a case of judgment procured by extrinsic fraud of an adversary a complainant is not required to make a motion to have the judgment vacated, before resorting to equity. That doctrine and authorities in support thereof are set forth in the editor's note (p. 238) to *Little Rock & Ft. Smith Ry. Co.* v. *Wells* (Ark.), reported in 54 Am. St. Rep. 216. See, also, *California Beet Sugar Co.* v. *Porter,* 68 Cal. 369, 9 Pac. 313. However exclusive section 9187, supra, may be in some cases, it is clear it is not exclusive in cases in which

extrinsic fraud has been perpetrated and, in this instance, we cannot say that such a motion as that suggested would have afforded an adequate remedy or would have been "proximately certain" (*Gray* v. *Citizens' Gas Co.*, supra) to afford relief.

Then, could plaintiff resort properly to equity for relief? Of that there can be no doubt. It is of almost universal application that equity will not countenance fraud, if there be no adequate remedy at law. "Fraud being the arch enemy of equity, a judgment obtained through fraud practiced in the very act of getting it will be set aside by a court of equity upon seasonable application. Indeed, the power of a court of equity to grant such relief is inherent. The conscience of the chancellor moves quickly to right the wrong, when it is shown that, through imposition practiced upon the court by a litigant, an unfair advantage has been gained by him and thus it has been made an instrument of injustice." (*State ex rel. Sparrenberger* v. *District Court*, 66 Mont. 496, 33 L. R. A. 464, 214 Pac. 85.) "The remedy of the aggrieved party in the premises must be in a new action to set the decree aside for fraud. A court of equity, under its general jurisdiction, has full authority to afford that relief upon a proper showing." (*State ex rel. Thompson* v. *District Court*, 57 Mont. 432, 188 Pac. 902.) "Relief will be granted when, in view of all the circumstances, to deny it would permit one party to suffer a gross wrong at the hands of the other." (*Brundy* v. *Canby*, 50 Mont. 454, 148 Pac. 315.) "The powers of a court of chancery in this respect are well recognized; it has inherent jurisdiction to relieve from fraudulent or void judgments, particularly where the invalidating facts are not apparent from the record. Such equitable intervention is very often a party's only means of escape from the invalid decision; without it he would be left remediless." (1 Freeman on Judgments, 5th ed., 613.)

The peculiar function of equity is to afford relief for wrong where there is no remedy or no adequate remedy at law. (10 R. C. L. 271.) An instance is to prevent a party from enjoying advantage of an unconscionable adjudication in his favor. (1 Black on Judgments, sec. 321.) In this case, we hold that, after denial by the district court of Bullard's application to have set aside his default, he had no adequate remedy at law. However, equity is more liberal in its remedies than is law and often affords relief of a different character or under circumstances which the law will not recognize. (1 Story's Equity Jurisprudence, 14th ed., 5.) In relieving from fraud, courts of equity often go not only beyond but even contrary to the rules of law. (Id. 261.) In this case, adequate remedy at law being absent, the broad powers of equity will not be stayed and see injustice done merely because the fraud charged involved violation of a rule of court. Equity is too flexible for that. "It matters little as to the mode or manner in which fraud is effected. A court [of equity] looks to the effect and asks if the result is a consequence of fraud. For any description of *mala fides* practiced in obtaining a judgment, equity will grant relief." (15 R. C. L. 761.) In *State ex rel. Happel* v. *District Court,* 38 Mont. 166, 129 Am. St. Rep. 636, 35 L. R. A. (n. s.) 1098, 99 Pac. 291, this court, quoting, with approval, from Story's Equity Jurisprudence, says: "In general, it may be stated that in all cases where by accident or mistake or fraud or otherwise a party has an unfair advantage in proceedings in a court of law, which must necessarily make that court an instrument of injustice and it is, therefore, against conscience that he should use that advantage, a court of equity will interfere and restrain him from using the advantage which he has thus improperly gained."

Counsel for Defendant O'Sullivan cite and rely upon the case of *St. Paul Fire & Marine Ins. Co.* v. *Freeman,* 80 Mont. 266, 260 Pac. 124. In that case it was held there were un-

reasonable delay and great laches and want of diligence and upon that ground equitable relief was refused. There is nothing of the kind here. There was no laches or want of diligence in the institution of this suit.

Counsel for Defendant O'Sullivan cite and rely, also, upon *Dunne* v. *Yund,* 52 Mont. 24, 155 Pac. 273. In that case, there is nothing at variance with our holding herein. From the opinion in that case counsel take this excerpt: "Both having omitted to invoke it [remedy at law by motion to vacate default] and no excuse for the omission appearing, the decree, though it be conceded it was erroneous, became effective and the court could not entertain an action to set it aside, except for fraud, knowledge of which was ascertained by plaintiff or his guardian after the time had expired within which the legal remedy might have been invoked. This rule is founded upon the elementary principle that, when one has an adequate remedy at law, a court of equity has no jurisdiction to grant him relief." Counsel imply therefrom that plaintiff herein could not invoke properly the power of equity unless knowledge of the fraud charged was ascertained by plaintiff after expiration of the time allowed for making application to have set aside the default. The case of *Dunne* v. *Yund* is easily distinguishable from the case at bar. In the former, the plaintiff did not attempt to invoke his remedy at law; made no motion to have set aside his default; and, without any effort to utilize his remedy at law, brought a suit in equity to annul the judgment against him. Therefore, under those circumstances, having made no attempt to obtain relief by motion and to use his remedy at law, the court held that, to obtain equitable relief, it was necessary that knowledge of the fraud charged must have come to plaintiff after expiration of the time for making motion for relief; otherwise, he should have made such a motion.

In this case, plaintiff did make such a motion or application and thereby utilized his remedy at law but no relief was

afforded him.   Hence, he did not have to acquire knowledge of the alleged fraud after expiration of the time for relief by motion.   The two cases are not analogous.   The essential difference between them is that in the case of *Dunne* v. *Yund* the plaintiff did not try his remedy at law, while in this case plaintiff did but without avail.   Other cases cited by counsel for defendant are equally inapplicable.

Notwithstanding all of the foregoing, Defendant O'Sullivan [10] contends finally that, when plaintiff, by motion, under section 9187, supra, sought relief from the default taken against him, he availed himself of an adequate remedy at law and, when relief thereunder was denied him, the matter became *res adjudicata* and he was precluded from resorting to equity; and, in support thereof, he cites several cases.   The contention and the cases cited, such of them as are applicable, are against the plain weight of authority.   The general rule to the contrary is set forth and discussed in the editor's note (p. 251) to *Little Rock & Ft. Smith Ry. Co.* v. *Wells,* supra, reported in 54 Am. St. Rep. 216, where many authorities contrary to defendant's contention are cited.   The rule is stated likewise in Black on Judgments, 2d ed., sec. 321.   See, also, Wells' Res Adjudicata, sec. 499; *Estudillo* v. *Security Loan & Trust Co.,* 149 Cal. 556, 87 Pac. 19.

We deem this a clear case for equitable relief.   The complaint is sufficient and the trial court had jurisdiction of person and of subject matter.   We hold the court erred in sustaining the demurrer to the complaint.   The judgment is reversed and the cause is remanded, with direction to the district court to overrule the demurrer.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES STARK, MATTHEWS and GALEN concur.

Rehearing denied June 26, 1928.